# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 1. ADAM BROOKS )<br>2. ROBERTA CRAIGO )<br>3. DANIEL ESCOBAR )<br>4. DANIEL KAPRAL )<br>5. WILLIAM RAMSEY )<br>6. ANTWAIYN SMALLS )<br>　　　　　　　　　　　　　　　　)<br>　　Plaintiffs, 　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　v. 　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>THE UNITED STATES, 　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　Defendant. 　　　　　　　　　)<br>_____ ) | Case No. **25-1245 C**<br>**COMPLAINT** |

## COMPLAINT

1.  The Plaintiffs are current or former employees of the United States ("Defendant" or "Government") at various federal agencies who are or have been reserve members of the United States armed forces or the National Guard and have been called or ordered to, and have served, in an active duty status within the past six years. Plaintiffs bring this action for damages, interest, and other relief pursuant to 5 U.S.C. §§ 5538 and 5596 (the Back Pay Act), and as a class action pursuant to Rule 23 of the Rules of the Court of Federal Claims, to remedy the Defendant's violations of law complained of herein.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, 5 U.S.C. § 5538, 5 U.S.C. § 5596 and 28 U.S.C. § 2501. Venue is proper pursuant to 28 U.S.C. § 1402.

### PARTIES

3.  Plaintiff Adam Brooks is currently employed by Defendant United States in the

Government Accountability Office[1] and has been a Senior Analyst (Band 2A) since 2021. Plaintiff Brooks has at all times material also been a member of the U.S. Army Reserves. As relevant here, Plaintiff Brooks served on active duty in his capacity as a member of the U.S. Army Reserves in position of Sergeant (E5) from January 15, 2024, through February 29, 2024, and in the position of Staff Sergeant (E6) from March 1, 2024, through September 30, 2024. Plaintiff Brooks did not use any paid leave during his period of active duty service in 2024, nor did he receive a reservist differential for the time period from January 15, 2024, through September 30, 2024.

4.      The additional persons who are Plaintiffs in this action also are or were employees of Defendant within the last six years. Each of the additional Plaintiffs has also been a member of the United States armed forces reserves or National Guard and has been called to, and served, in active duty status within the last six years.

5.      The Plaintiffs are, and have been at all times material, "employees" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5342.

6.      Defendant United States is, and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. Defendant employs, or has employed, the Plaintiffs and other similarly situated employees and has its principal place of business in Washington, D.C.

## FACTS

1.      Under the National Emergencies Act and, specifically, 50 U.S.C. § 1621, the President of the United States has authority to declare national emergencies through issuance of proclamations, which are transmitted to Congress and published in the Federal Register. Under 50

---

[1] Chapter 55 of Title 5 of the U.S. Code and the implementing Office of Personnel Management Regulations applies to employees of the Government Accountability Office. *See* 4 C.F.R. § 5.4.

2

U.S.C. §1622(d), the President is also authorized to renew previously issued proclamations of national emergencies through issuance and transmission of a notice, to be published in the Federal Register, that the national emergency is to continue in effect.

2. National emergencies declared by the President terminate when there is enacted into law a joint resolution terminating the emergency or when the President issues a proclamation terminating the emergency. 50 U.S.C. § 1622(a). Accordingly, national emergencies regularly continue as active national emergencies for many years.

3. For at least the past six years, and continuing to the present, there has been at least one ongoing national emergency declared by the President.

4. For example, Proclamation 7463 was issued by President George W. Bush on September 14, 2001, to memorialize the declaration of a national emergency with respect to the terrorist attacks of September 11, 2001, and the continuing and immediate threat of further attacks on the United States. 66 FR 48199 (Sept. 14, 2001). Every President since then has renewed Proclamation 7463 to continue the ongoing national emergency on an annual basis, including most recently by President Joseph Biden for a one year period beginning on September 14, 2024. 89 FR 74701 (Sept. 9, 2024). *See also, e.g.,* 83 FR 46067 (Sept. 10, 2018); 84 FR 48545 (Sept. 12, 2019); 85 FR 56457 (Sept. 10, 2020); 86 FR 50835 (Sept. 9, 2021); 87 FR 55897 (Sept. 9, 2022); 88 FR 62433 (Sept. 7, 2023). Thus, the national emergency related to the terrorist attacks of September 11, 2001, has been ongoing from September 14, 2001, to the present.

5. For example, on April 21, 2022, President Biden issued Proclamation 10371 declaring a national emergency "Relating toto Regulation of the Anchorage and Movement of Russian-Affiliated Vessels to United States Ports." 87 FR 24265 (Apr. 21, 2022). This national emergency is still ongoing to present.

6. For example, on January 20, 2025, President Trump declared a national emergency at the southern border of the United States through the issuance of Proclamation 10886. 90 FR 8327 (Jan. 20, 2025). This national emergency is still ongoing to the present.

7. At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under Title 5 of the United States Code.

7. Section 5538 of Title 5 of the U.S. Code provides that a federal employee who is "ordered to perform active duty in the uniformed services pursuant to a call or order to active duty" is entitled to continue to receive the amount of basic pay they would have otherwise have received in their civilian employment had it not been interrupted by their military service to the extent that it exceeds the amount of pay and allowances payable to the employee for their military service. This is determined on a pay-period basis. Put another way, employees serving on active duty are entitled to receive as a differential from their employing agency the difference between their civilian basic pay and their military pay.

8. Reservist differential pay is owed to employees who are called or ordered to serve on active duty "under a provision of law referred to in 10 U.S.C. § 101(a)(13)(B)," which includes, among other things, "any other provision of law during a war or during a national emergency declared by the President or Congress."

9. On April 30, 2025, the U.S. Supreme Court confirmed that "during a national emergency" for purpose of a federal employee's right to reservist differential pay means at any time there is an ongoing national emergency, regardless of whether the employee's military service is substantively related to the national emergency. *Feliciano v. Department of Transportation,* No. 23-861, 605 U.S. _____ (Apr. 30, 2025).

10. As such, all federal employees who serve as military reservists and have been called

or ordered to active duty, and have served in active duty status, within the last six years and whose civilian pay exceeded their military pay for each pay period during which they were on active duty have been entitled to be paid reservist differential pay because there has always been an ongoing national emergency during that time period.

11. Despite the fact that Plaintiffs and all others similarly situated were called or ordered to, and performed, active duty military service in the past six years "during a national emergency declared by the President or Congress," and the amount of their civilian pay exceeded the amount of military pay they received, they did not receive reservist differential pay under 5 U.S.C. § 5538.

## CLASS ACTION ALLEGATIONS

12. Representative Plaintiff Brooks brings this action as a class action pursuant to Rule 23 of the Rules of the Court of Federal Claims on behalf of himself and a Class defined as follows: "All federal employees who have been called or ordered to, and did serve, in active duty service in the U.S. armed forces or National Guard in the last six years and whose civilian basic pay exceeded their military pay during at least one pay period in which they were serving on active duty."

13. There are hundreds, if not thousands, of members of the Class. Thus, the Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, Class Members are known to Defendant, are readily identifiable by the Defendant, and can be located through Defendant's work and payroll records.

14. There are numerous questions of law and fact common to the members of the Class including:

    a. Whether Representative Plaintiff Brooks and Class Members are entitled to

reservist differential pay pursuant to 5 U.S.C. § 5538 during the last six years, although the Supreme Court's recent decision in *Feliciano v. Department of Transportation,* No. 23-861, 605 U.S. \_\_\_\_\_ (Apr. 30, 2025), has fully resolved this issue;

b. Whether Representative Plaintiff Brooks and Class Members have suffered monetary damages by failing to receive their lawfully owed reservist differential pay for each pay period during which they served on active duty during the last six years; and

c. Whether as a result of the violations of Title 5 the Representative Plaintiff and Class Members are entitled to an award of attorneys' fees and costs.

15. The claims of Representative Plaintiff Brooks are typical of all Class Members, and he has the same interest in this matter as all Class Members.

16. Representative Plaintiff Brooks is an adequate Class representative, is committed to pursuing this action, and in the undersigned attorneys has retained competent counsel experienced in wage and hour law, particularly as it relates to federal employees, and class action litigation.

## **COUNT ONE**

### **Reservist Differential Pay Under 5 U.S.C. § 5538**

17. Plaintiffs re-allege and incorporate by reference herein Paragraphs 1 through and including Paragraph 16 of this Complaint.

18. Section 5538 of Title 5 of the U.S. Code, Nonreduction in pay while serving in the uniformed services or National Guard, provides that an "employee who is absent from a position of employment with the Federal Government in order to perform active duty in the uniformed services pursuant to a call or order to active duty under section 12304b of title 10 or a provision of

6

law referred to in section 101(a)(13)(B) of title 10 shall be entitled, while serving on active duty, to receive, for each pay period" an amount equal to the amount by which their basic pay which would otherwise have been payable to such employee for such pay period of such employee's civilian employment with the Government had not been interrupted by military service exceeds the amount of pay and allowances payable to the employee for their military service (i.e., the difference between their military pay and their civilian basic pay).

19. "A provision of law referred to in section 101(a)(13)(B) of title 10" includes a "call or order to, or retention on, active duty of members of the uniformed services under…any other provision of law during a war or during a national emergency declared by the President or Congress."

20. During the past six years, through the present and continuing and ongoing, Plaintiffs and others similarly situated have been called to active duty military service "during a national emergency." As such, they have been entitled to receive reservist differential pay pursuant to 5 U.S.C. § 5538.

21. By failing and refusing to pay Plaintiffs reservist differential pay for the pay periods in which they served on active duty during a national emergency and their civilian pay exceeded their military pay, the Defendant has violated, and is continuing to violate, the provisions of Title 5 relating to "nonreduction in pay while serving in the uniformed services or National Guard," i.e., reservist differential pay.

22. As a consequence of Defendant's failure and refusal to pay the Plaintiffs reservist differential pay at all times material herein, the Plaintiffs have been unlawfully deprived of reservist differential pay and other relief for the maximum statutory period allowed under federal law.

23. As a result of the Defendant's willful and purposeful violations of Title 5, there has become due and owing to each of the Plaintiffs various amounts that have not yet been precisely determined. The employment and payroll records for each Plaintiff, including records of their civilian and military pay, are in the exclusive possession, custody and control of Defendant and its public agencies, and the Plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amounts of Defendant's liability can be ascertained.

24. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, Plaintiffs are entitled to recover interest on their back pay damages for the Defendant's failure to pay them reservist differential pay.

25. Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, on their own behalf and on behalf of others similarly situated who opt into this lawsuit, pray that this Court:

(a) Enter judgment declaring that Defendant United States has wrongfully violated its statutory obligations, and deprived each of the Plaintiffs of their rights;

(b) Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(c) Award each Plaintiff monetary damages in the amount of the reservist differential pay to which they are entitled, plus interest, for the applicable statutory recovery period;

(d) Award Plaintiffs their reasonable attorneys' fees to be paid by the Defendant, and

the costs and disbursements of this action; and

    (e) Grant such other relief as may be just and proper.

Dated: July 29, 2025                                            Respectfully submitted,

                                                             */s/ Gregory K. McGillivary*
                                                             Gregory K. McGillivary
                                                            MCGILLIVARY STEELE ELKIN LLP
                                                            1101 Vermont Avenue, N.W.
                                                            Suite 1000
                                                            Washington, D.C.  20005
                                                            (202) 833-8855
                                                            gkm@mselaborlaw.com

                                                            *Attorney of Record for Plaintiffs*


                                                            Sarah M. Block
                                                            McGILLIVARY STEELE ELKIN LLP
                                                            1101 Vermont Avenue, N.W.
                                                            Suite 1000
                                                            Washington, D.C. 20005
                                                            (202) 833-8855
                                                            smb@mselaborlaw.com

                                                            *Of Counsel for Plaintiffs*